WILTSE ET AL. *v.* CORNELL.

[No. 1068A167. Filed March 26, 1970. Rehearing denied May 14, 1970.]

*Fred Schwanke,* Monticello, for appellants.

*LouisPearlman, Jr.,* and *Carl J. Sandy,* both of Lafayette, for appellee.

PFAFF, J.—In April 1965, appellants, Homer Wiltse and Pauline Wiltse, the owners of real property located in White County, Indiana, known as the "Holiday Inn Restaurant," entered into a written agreement for the sale of said property to the appellee herein, La Verne Cornell. The agreement, in pertinent part, provided as follows:

## "ARTICLES OF AGREEMENT

"In consideration of the sum of $25,000.00 to be paid as hereinafter set out, with interest at 6 per cent per annum on this unpaid balance to be paid monthly until paid, Homer E. Wiltse [and] Pauline C. Wiltse hereinafter designated as the owner, agrees to sell to Mrs. La Verne Cornell hereinafter designated as the purchaser, upon compliance with the conditions herein contained, the following described real estate in White County, Monticello, Indiana: Lots 1-2-3-4-5-6-7-8 Lake Drive Subdivision located at 905 N. Main St.

"The purchaser agrees to pay the said purchase price as follows: $1900.00 cash in hand upon the execution of this agreement and the balance of $23,100.00 to be paid as follows: Eight monthly payments of $160.00 each and four more of $200.00 each making $2080.00 yearly. The first monthly payment to be due and payable the 1st day of June, 1965, and one each month thereafter until fully paid; said monthly payment shall include interest. The interest may be deducted from monthly payments and the balance shall be credited on the principal. The purchaser has the privilege of paying an amount equal to one monthly payment or more in addition to the regular monthly payment at any time and interest to stop on amounts so paid. * * *.

* * * * *

"In case of failure to pay said sums of money as herein specified or in case of failure on the part of purchaser to comply with any of the conditions herein set forth, the owner may, after a lapse of sixty days from such failure, at his option, declare this agreement forfeited and may enter upon said premises and take full possession of same without notice or process of law. Failure, neglect or delay by the first party to rescind this agreement by reason of breach of conditions shall not operate as a waiver of the first party's right to exercise or enforce such recission at any time thereafter, and he shall not be stopped for so doing. * * *."

The agreement further provided for payment of taxes and insurance coverage. Also included was a provision that upon default of vendee, the vendee was to be a tenant and the agreement construed to be a lease. Upon completion of all the terms contained in the agreement, the vendors were to execute and deliver a warranty deed to vendee, appellee Cornell.

Prior to the execution of this agreement, appellee was renting the real property that was the subject of the agreement, and appellee's prior rental payments constituted her down payment under the terms of the agreement. In addition to the restaurant building, the property contained a smaller building which was used as a barber shop and produced rental income of $30.00 per month. Before and after execution of the agreement rental income from this property was paid directly to the appellants and the evidence adduced at the trial is conflicting as to whether these amounts were in partial satisfaction of appellee's monthly obligation under the agreement. Under the terms of the agreement, however, all that is required is payment of the yearly sum of $2,080.00, with payments for the summer months being somewhat larger because of the increased seasonal revenues inherent in the operation of a "resort area" restaurant during that time of the year.

In April 1965, after execution of the agreement, appellee continued her operation of the restaurant and made improvements thereon with financial assistance from the appellant, Homer Wiltse, who loaned appellee $1,000.00 toward the purchase of fixtures.[1] Appellee made payments pursuant to the provisions of the agreement, but was partially delinquent in making her payments on each of the following dates: July 1, 1966, November 1, 1966, and December 1, 1966. On each occasion, however, the appellee made up these deficiencies within a short period of time. On January 1, 1967, appellee's entire monthly payment of $160.00 was delinquent, but on January 3 and January 9 she tendered two $40.00 payments. There were no further payments made, and on March 3, 1967, sixty days after the payment due on January 1, 1967, became delinquent, appellants Wiltse declared a forfeiture, notice of which was received by appellee by registered mail on April 4, 1967.

Prior to this time, in October 1966, appellee had listed the property for sale with appellant Shumaker, a licensed real

---

1. There is no question presented as to any obligation under the loan for fixtures.

estate broker, and appellant Shumaker held a valid listing agreement on the property. On March 28, 1967, appellant Shumaker obtained an offer to purchase the real estate for the sum of $29,000.00 from one Musall and one Soloman. This offer of purchase was submitted to appellants Wiltse, but appellee had no knowledge of this fact. On April 5, 1967, appellants Wiltse and Musall and Soloman executed a contract for the sale of the real property. Also, appellee, due to poor health, had in February 1967, temporarily closed the restaurant and during her absence the building locks were changed, thereafter barring her entry.

This appeal results from a jury trial in which plaintiff-appellee, La Verne Cornell, was awarded $9,000.00 in damages. Appellee instituted the action and charged the defendants (appellants Wiltse) with breaching the original agreement between appellee and appellants Wiltse, and wrongful deprivation of property. Appellant Shumaker was charged with tortiously interfering with the agreement of sale between appellee and appellants Wiltse. Damages assessed against appellants Wiltse were in the amount of $6,500.00 and damages assessed against appellant Shumaker were in the amount of $2,500.00.

Appellants now specify as error the overruling of their motions for new trial.

Although appellants complain that it was error to refuse certain instructions, that the verdict is supported by insufficient evidence, that the verdict is contrary to law, and that numerous errors occurred at trial, our resolution of the questions presented requires us to first answer this question: Was the appellee in default under the terms of the agreement?

The agreement in question does not provide for equal monthly payments. Rather, appellee was obligated to make four payments of $200.00 per month and eight payments of $160.00 per month. The agreement does not state those months in which the larger payments were

to be made. By reason of this ambiguity we interpret this agreement as requiring the payment of a yearly sum of $2,080.00.

The monetary terms of the agreement are definite as to only three items: A $1,900.00 cash down payment, a payment balance after down payment of $23,100.00, and a yearly payment obligation of $2,080.00. We cannot determine those months in which the vendee was required to pay a larger monthly payment, i.e., $200.00 as opposed to $160.00. It can be seen, therefore, that the parties, under the terms of the agreement by which they are both governed, were unable to discern in which months the larger $200.00 payments are due. This uncertainty leaves the vendee in an untenable position. The agreement, as written, allows the vendors the option of declaring default on the contract by reason of a failure to make a monthly payment when the exact amount of that payment and the month when due are not specified. The larger monthly payments were presumably to be made during the summer months when profits from the operation of the resort area restaurant would have been at their highest level. This would be to the vendee's advantage. The agreement, however, does not recite this fact. By reason of the uncertainty as to those months in which the largest payments were due, we hold that the vendee was, under the terms of the agreement, obligated to pay only the yearly sum of $2,080.00. If this amount was paid in any one year, there could be no default on the contract. Appellee Cornell was therefore allowed to make monthly payments as she desired, so long as over a yearly term commencing June 1 of one year and terminating on May 31 of the next year, the per annum sum of $2,080.00 with interest was paid. The vendee's right of prepayment with interest to stop on amounts so paid was directed to the monthly payments, but by reason of the aforesaid ambiguity as to the terms of monthly payments, the prepayment provision is of no assistance in attempting to fairly construe the agreement provisions. Additionally, the agreement specified that the

vendors, upon the vendee's default in failing to tender the monthly payments or in failing to comply with any of the conditions recited in the agreement after a lapse of sixty days therefrom, had the option of declaring a forfeiture and re-taking possession, and failure to declare a forfeiture was not to operate as a waiver of that right. Again, the monthly payment ambiguity necessarily modifies the operation of the forfeiture provision so as to invest the vendors with the right to declare a forfeiture sixty days subsequent to the date when any yearly amount of $2,080.00 became due.

In 91 C.J.S., *Vendors & Purchaser*, § 84, pp. 967-970, we note the folowing statements as applicable to the situation before us:

> "The rules relating to the construction of contracts generally govern the construction of contracts relating to the sale of land; and where the contract is not clearly expressed, the court is required to resort to the usual rules of construction to ascertain, if possible, what the parties meant by the language they employed.
>
> "The main rule of construction is to ascertain and give effect to the intention of the parties as expressed in the agreement, and to this end the contract should be construed as a whole, giving effect to every portion of the instrument, if possible, and always preferring that construction which renders the agreement legal rather than one which will make it void. * * *.

> \* \* \* \* \* \* \* \* \*

> "Although it has been held that the contract must be construed most strongly against the vendor and in favor of the purchaser, the rule has been said to be that ambiguities will be construed most strongly against the party drawing up the contract and not in his favor."

In the instant case, the vendors Wiltse drew the contract and they must suffer from any hardships that result from the ambiguities they made. Further, in 91 C.J.S., *Vendor & Purchaser*, § 97, p. 981, the general rule regarding a purchase money provision ambiguity is stated as follows:

"If a contract of sale states the purchase price and is clear and unambiguous, there is no necessity for construction, and the amount so stated will control, notwithstanding the amount so stated is different from the consideration named in the deed subsequently made for the property, the recital of consideration in the deed not being binding on either party, and subject to be shown not to have been the true consideration for the sale. So, also, if in the contract of sale a general recital of the consideration is inconsistent with the subsequent provisions as to the terms of payment, which are definite and particular, the latter will control."

With reference to the last sentence of the above-quoted paragraph, the converse situation is presented in this case, i.e., the definite payment terms are ambiguous, whereas the total purchase price and yearly payment provisions are unambiguous. We conclude that by reason of the fact the amount due per month varies, and whereas those months in which the largest payments are due are not specified, the parties are governed by the provision requiring a yearly payment of $2,080.00 and that the vendee cannot be in default unless within sixty days after the termination of one year, on a year to year basis commencing at the date of execution of the agreement, the yearly amount of $2,080.00 has not been paid.

Under the agreement the yearly period of payment was to commence on June 1, 1965, and terminate on June 1, 1966. The record establishes that during the period from June 1, 1965, to January 1, 1967, when default was erroneously declared, the vendee, La Verne Cornell, had paid a total of $4,830.00, which amount was in excess of the amount due under the contract, even if she was required to pay a definite monthly amount. As aforesaid, by reason of the payment ambiguity vendors were without the option to declare default until June 1, 1967, when the second year's total amount of $2,080.00 was due. Therefore, the vendors wrongfully declared the vendee in default and wrongfully terminated the contract by declaring a forfeiture.

As to the appellants Wiltse, the judgment of the trial court was correct and not contrary to law.

Appellant Shumaker contends that because the vendee was in default under the contract, she was relieved of her duty to the vendee. We have declared that the vendee was not in default, but even if she was, such default would not relieve a real estate broker from his or her duties to the party desiring to sell the property and having a right to sell such property. Appellant Shumaker was obligated to the vendee to notify her of the offer of purchase made by the third parties, but said appellant breached her duty by negotiating a contract for sale between the original vendors, the Wiltses, appellants herein, and third parties, one Musall and one Soloman. The vendee, appellee Cornell, had no knowledge of this transaction; rather, she believed that appellant Shumaker was negotiating a sale on her behalf. Appellant Shumaker did obtain an offer to purchase from Musall and Soloman but transmitted the offer to the original vendors and not to the vendee. Thereafter, the appellants Wiltse, and Musall and Soloman, entered into a contract for the sale of the property when the original vendee was not in default.

Without deciding whether or not a vendee under an installment sales contract for the sale of realty has, in all situations, an absolute right to sell that property to a third person, we deem it necessary to mention the problem, because if the vendee lacks a right of sale to a third person, a real estate broker with whom that vendee deals owes no real duty to the vendee. In the instant case, because the vendee was, under the terms of the contract, invested with the right of prepayment or acceleration and, having that right, could have tendered full payment, compelled execution and delivery of the deed, and, consequently, could have sold the property to a third person, the real estate broker was under a legal duty to act as the agent of the vendee in attempting to sell the property.

Appellant Shumaker breached her duty to appellee Cornell and the judgment and award of damages against her is also

affirmed. See, generally, 12 Am. Jur. 2d, *Brokers,* § 96, pp. 847-849.

Judgment affirmed. Costs are to be taxed against appellants.

Hoffman, P.J., and Sharp, J., concur; White, J., concurs in result.

NOTE.—Reported in 256 N. E. 2d 472.